# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MATTHEW JOHN FISHER, | : | |
| SETH ROSENBERG, by his next | : | 02-CV-4007 |
|   friend IRA ROSENBERG; and | : | |
| JAMES WALTON | : | |
| | : | |
|        v. | : | |
| | : | |
| BOROUGH OF DOYLESTOWN; and | : | |
| POLICE OFFICER JEROLD BREDOW | : | |
|   ind. and as a police officer of the | : | |
|   Borough of Doylestown; and | : | |
| ROBERT WELCH | : | |
| | : | |

## O R D E R

**AND NOW**, this        day of         , 2003, upon consideration of Defendant

Robert Welch's Motion for Summary Judgment, and any responses thereto, it is hereby

**ORDERED** and **DECREED** that said Motion is **GRANTED**.    All claims against

Defendant Robert Welch are **DISMISSED WITH PREJUDICE**.

**BY THE COURT:**


_____ **J.**

**FRANCIS R. GARTNER & ASSOCIATES**



**FILED BY:** _____
      **TED D. BROOM, ESQUIRE**
      **IDENTIFICATION NO. 36417**
      **ATTORNEY FOR DEFENDANT**
      **LAW OFFICES**
      **FRANCIS R. GARTNER & ASSOCIATES**
      **UNION MEETING III**
      **960-B HARVEST DRIVE, SUITE 215**
      **BLUE BELL, PA 19422-1969**
      **(215) 619-4362**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MATTHEW JOHN FISHER,** | : | |
| **SETH ROSENBERG, by his next** | : | **02-CV-4007** |
|   **friend IRA ROSENBERG; and** | : | |
| **JAMES WALTON** | : | |
| | : | |
|      **v.** | : | |
| | : | |
| **BOROUGH OF DOYLESTOWN; and** | : | |
| **POLICE OFFICER JEROLD BREDOW** | : | |
|   **ind. and as a police officer of the** | : | |
|   **Borough of Doylestown; and** | : | |
| **ROBERT WELCH** | : | |
| | : | |

### DEFENDANT ROBERT WELCH'S MOTION FOR SUMMARY JUDGMENT

     **NOW COMES**, Defendant Robert Welch, by and through his counsel,

Ted D. Broom, Esquire, and moves this Court, pursuant to F. R.C.P. 56(b) for Summary

Judgment.  In support thereof, Defendant Robert Welch represents as follows:

     1.     This is a civil action brought by Plaintiffs against Defendant Robert

Welch, the Borough of Doylestown and Police Officer Jerold Bredow claiming that

Defendants violated Plaintiffs' Constitutional rights under the Fourth and Fourteenth

Amendments and accordingly under 42. U.S.C.A. § 1983.  Plaintiffs also assert pendant

state law claims against Defendants for unlawful arrest, assault and battery and malicious

prosecution.  A true and correct copy of Plaintiffs' Complaint is attached hereto and

marked Exhibit "H".

     2.     Plaintiffs claim the Defendant Robert Welch, a private citizen, is liable to

them by alleging that he acted jointly with or in conspiracy with the Defendant Police

Department and/or Officer Bredow to deprive Plaintiffs of their Constitutional rights thus becoming a "state actor" himself.

3.     Defendant Welch denies that he acted jointly with the police or that he conspired with them.  A true and correct copy of Defendant Robert Welch's Answer and Affirmative Defenses is attached hereto and marked Exhibit "I".

4.     Discovery in this matter is now closed.  The pleadings, depositions, answers to Interrogatories reveal that there are no genuine issues of material fact as to the alleged conspiratorial conduct of Defendant Welch and that the facts reveal that Plaintiffs are incapable , as a matter of law, of making out a case against Defendant Welch. Therefore, Defendant Welch is entitled to judgment in his favor as a matter of law.

WHEREFORE, for all the reasons set forth in the accompanying Memorandum, Defendant Robert Welch requests this Honorable Court grant judgment in his favor by entering as its own, the proposed Order attached hereto.

**Respectfully submitted,**

**FRANCIS R. GARTNER & ASSOCIATES**

**BY:** _____
**TED D. BROOM, ESQUIRE**
**IDENTIFICATION NO. 36417**
**ATTORNEY FOR DEFENDANT**
**LAW OFFICES**
**FRANCIS R. GARTNER & ASSOCIATES**
**UNION MEETING III**
**960-B HARVEST DRIVE, SUITE 215**
**BLUE BELL, PA  19422-1969**
**(215) 619-4362**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____

| | | |
|---|---|---|
| MATTHEW JOHN FISHER, | : | |
| SETH ROSENBERG, by his next | : | 02-CV-4007 |
|   friend IRA ROSENBERG; and | : | |
| JAMES WALTON | : | |
| | : | |
|      v. | : | |
| | : | |
| BOROUGH OF DOYLESTOWN; and | : | |
| POLICE OFFICER JEROLD BREDOW | : | |
|   ind. and as a police officer of the | : | |
|   Borough of Doylestown; and | : | |
| ROBERT WELCH | : | |
| | : | |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION FOR SUMMARY JUDGMENT OF DEFENDANT, ROBERT WELCH**

## I.    FACTUAL BACKGROUND

This civil action arises out of events that occurred at approximately 6:30 p.m. on the evening of September 8, 2000 at or near the rear porch and parking lot of 5 N. Main Street in Doylestown, Pennsylvania. The premises is a large historic building known as Fountain House and at all material times was owned by Fountain House Investments, L.P. A part of the interior of Fountain House was leased to Starbucks Corporation. (See Lease Agreement attached hereto as Exhibit "A".).[1]

1.    Defendant Robert Welsh is the Vice President of Fountain House Investments, Inc., a general partner of Fountain House Investments, L.P., the owner.

At that time Defendant Police Officer Jerold Bredow was on patrol in the area when he noticed a large crowd of young people blocking the steps to the porch

---

[1] Note that Exhibit "B" of this Lease Agreement shows the shaded in portion of the interior first floor portion leased to Starbucks. The porch is clearly not leased to Starbucks but is rather a common area owned, possessed and controlled by the owner.

which led to the Starbucks Cafe entrance.  Considering this a safety hazard Officer

Bredow made an announcement that all persons not partaking of Starbucks products

should move on.  (See District Justice hearing of Matthew Fisher at pages 20-21, attached

hereto as Exhibit "B"; also see Deposition Transcript of Officer Bredow p. 30, excerpts of

the transcript being attached hereto as Exhibit "C".).  Officer Bredow then returned to his

patrol car for a few minutes to allow time for compliance with his order.  Few people left.

       A few minutes later Officer Bredow again made a general announcement.

This time he said that everybody has to leave.  He made no exceptions for Starbucks

patrons.  (Bredow deposition, p. 34).  Plaintiffs Fisher, Walton and Rosenberg did not

move, but rather stayed on the porch following the second order given by Officer

Bredow.  (Bredow deposition, pps. 37-38.).  Officer Bredow then returned to his vehicle

to give the people on the porch a few more minutes to comply with his order.  The

Plaintiffs did not comply.

       At that time Defendant Robert Welch, the owner, approached Officer

Bredow and asked what was going on.  Officer Bredow explained that he was having no

luck dispersing the crowd on the porch.  (See Deposition of Robert Welch at page 39,

excerpts of the transcript being attached hereto as Exhibit "D").  Officer Bredow had had

no previous contacts with Robert Welch.  (Bredow, p. 39.).

       Officer Bredow then got out of his patrol car and told Welch that he

needed to make an announcement that he is the property owner and that he wished that

-2-

the property be vacated.  He told Welch that he had already made an announcement and

that he would then witness the announcement of the property owner.  (Bredow, p. 46,

47.).

Robert Welch then made a similar announcement to the remaining porch

crowd.  he pointed out the "No Loitering", "No Trespassing" and "Starbucks Customers

Only" signs posted on the porch.  (See photograph of porch attached hereto as Exhibit

"E".).

By this time, Officer Carlin had arrived and had witnessed Welch making a

second request to the crowd to leave.  (See Carlin Deposition pps. 22-23, excerpts of the

transcripts being attached hereto as Exhibit "F".).  None of the three Plaintiff had left the

porch area by that time.

After allowing about five more minutes for the Plaintiffs and others to

leave, (Welch, p. 41.) Welch said that he wanted the Plaintiffs arrested.  He pointed out

the Plaintiffs at the request of the police officers who then affected their arrests pursuant

to the Complaint of Robert Welch.  (See Voluntary Written Statement [Private

Complaint] of Robert Welch attached hereto as Exhibit "G".).

Officer Carlin indicated that he had received enough information from

Officer Bredow, Mr. Welch, and from his own observations to make an arrest of the

Plaintiffs.  (See generally Carlin Deposition, pps. 65-74.).  Specifically Officer Carlin

indicated that he believed that the juveniles were passing around coffee cups to give the

appearance that they were all customers (Id. at 66.); that he had not spoken to Mr. Welch

-3-

prior to his arrival at the Fountain House that day.  (Id. at 67.); that he did not formulate a

plan with Mr. Welch about arresting the individuals who were there.  (Id. at 67.); that he

never learned from any source that Mr. Welch had made a plan with Officer Bredow to

have people arrested.  (Id. at 68.); that he made an independent decision to make the

arrests.  (Id. at 69.); that he did not simply rely on Mr. Welch's request that the Plaintiffs

be arrested, (Id. at 73.) and that he has concluded that he has no evidence to suggest that

Mr. Welch conspired with the police department to arrest the Plaintiffs that day.  (Id. at

72.).

        The Plaintiffs were taken into custody, charged with violations of the

Crimes Code 18. Pa. C.S.A. § 5502.  (Failure of Disorderly Persons to Disperse Upon

Official Order, 18 Pa. C.S.A. § 5503  Disorderly Conduct and 18 Pa. C.S.A. § 3503 (b)

Defiant Trespass.  Ultimately all defendants either had the criminal matters against them

dismissed or adjudicated non-delinquent as their respective ages dictated.

## II.    PLAINTIFFS' COMPLAINT:

        Plaintiffs' complaint contains two Counts.  Count I purportedly asserts an action

pursuant to 42. U.S.C. § 1983 based upon the alleged violations of Plaintiffs' Fourth and

Fourteenth Amendment rights under the United States Constitution.  Count II asserts

pendant state law claims in assault and battery, unlawful arrest and malicious prosecution

under the Constitution of the Commonwealth of Pennsylvania.  Defendant Welch's

alleged liability is predicated upon him, a private person, acting "under color" of law.

III.    <u>STANDARD OF REVIEW</u>:

Fed.R.C.P. 56(c) provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, an admissions on file, together with the Affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."  A material fact is one which might affect the outcome of a case under governing law, so that factual disputes that are irrelevant or immaterial do not provide a basis for denying a summary judgment motion. The Supreme Court has recognized that the moving party "bears the initial responsibility of informing the District Court of the basis for its motion, and identifying those portions…which it believes demonstrate the absence of a genuine issue of material fact." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  After the moving party has filed a properly supported motion, the burden shifts to the non-moving party to "set forth specific facts showing the there is a genuine issue for trial."  <u>Fed.R.C.P. 56(e)</u>.  The non-moving party may not rest upon the mere allegations or denials of the parties pleading.

If the record taken as a whole in a light most favorable to the non-moving party, "could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." <u>Matsushita Elec. Company v. Zenith Radio</u>, 475 U.S. 574, 587 (1986).  If the evidence for the non-moving party is merely colorable, or if it is not significantly probative, summary judgment may be granted.  <u>Anderson v. Liberty Lobby, Inc</u>., 477 U.S. 242, 249-50 (1986).

-5-

IV.    **ARGUMENT**

    A.    **Plaintiffs cannot seek relief against Defendant Robert Welch under 42 U.S.C. §1983; at no time was Robert Welch functioning as a state actor**

        The basis of any 42 U.S.C. §1983 claim against a private entity is a conclusive determination that the defendant was effectively functioning as a state actor during the alleged violation. *See generally* <u>Susavage v. Bucks County Schools Intermediate Unit No. 22</u>, 2002 WL 1359676 (E.D.Pa. Jun. 18, 2002). The statute provides that liability attaches where 1) an entity acts "under color of law;" and 2) under such action "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities" granted by federal statutory or constitutional law. <u>42 U.S.C. §1983</u>. The requirement of conduct "under the color of law" is equated with the requirement of "state action" outlined in the Fourteenth Amendment. <u>United States v. Price</u>, 383 U.S. 787, 794 n. 7; <u>Mark v. Borough of Hatboro</u>, 51 F.3d 1137 (3rd Cir. 1995). The Supreme Court has developed in its most recent case law, three distinct methods to determine whether a private entity's actions may be treated as those of the state: 1) the "exclusive government function" test; 2) the "symbiotic relationship" test and 3) the "close nexus" test. There is no requirement that all three tests be satisfied; instead, one test might be more applicable than others based on the issues presented. <u>Brentwood Acad. v. Tennessee Secondary Sch. Assoc.</u>, 531 U.S. 288; 302-03 (2001); *see* <u>Thomas v. Larson</u>, 2001 WL 185729, at *14 (E.D.Pa. Feb. 27, 2001).

Plaintiffs contend that, on the day in question, Mr. Welch conspired with the Doylestown Police to deprive Plaintiffs their Fourteenth Amendment rights; thus invoking the "symbiotic relationship" test. This test rests upon the inquiry whether "the private party has acted with help of or in concert with state officials," Mark, 51 F.3d at 1142 *quoting* McKeesport Hospital v. Accreditation Council for Medical Ed., 24 F.3d 519, 524 (3rd Cir. 1994) essentially requiring that a conspiracy between the state and the private entity exists. The test focuses on the relationship between the state and the alleged wrongdoer examining whether there is great degree of interdependence between the two parties. Id. at 1142; *see* Adickes v. S.H. Kress & Co., 398 U.S. 144, 152, 90 S.Ct. 1598, 1606, 26 L.Ed.2d 142 (1970); Burton v. Wilmington Parking Auth., 365 U.S. 715, 725 (1961).

There is an added requirement that the private party has acted "under the color of law" in the furtherance of the alleged conspiracy. Adickes, 398 U.S. 144, 150 (1970); *see also* Pulice v. Enciso, 39 Fed.Appx.692 (C.A.3.Pa. 2002); Barnes Foundation v. Township of Lower Merion, 242 F.3d 151 (C.A.3.Pa. 2001); Ridgewood Bd. Of Educ. v. N.E. ex rel. M.E., 172 F.3d 238 (C.A.3.N.J. 1999); Abbott v. Latshaw, 164 F.3d 141 (C.A.3.Pa. 1998); Reitz v. County of Bucks, 125 F.3d 139 (C.A.3.Pa. 1997); Parkway Garage, Inc. v. City of Philadelphia, 5 F.3d 685 (C.A.3.Pa 1993). In construing this requirement, the Court has held that:

> [p]rivate persons , jointly engaged with state officials in the
> prohibited action are acting "under the color" of law for
> purposes of the statute.  To act "under color" of law does
> not require that the accused be an officer of the State.  It is
> enough that he is a willful participant in a joint activity
> with the State or its agents.

-7-

United States v. Price, 383 U.S. 787, 794, 86 S.Ct. 1152, 1157, 16 L.Ed.2d 267 (1966).

Merely providing information to the authorities, who are then in the position to act upon

this information as they see fit, is not sufficient interaction to be considered action "under

the color of law."  Butler v. Goldenblatt Bros., Inc., 589 F.2d 323, 336 (7th Cir. 1978).

Applying this principles to the instant case it is apparent that Defendant

Robert Welch's interactions with the police on the day in question do not constitute a

conspiracy so as to make him a state actor, subject to potential liability in this case.

It is undisputed that Mr. Welch was not the first person on the scene that

day.  To the contrary, it is clear that Defendant Officer Bredow had already been at the

scene and had already made efforts to disperse the crowd congregated on the porch area

of the Starbucks Cafe.  It is undisputed that Officer Bredow had asked non-Starbucks

patrons to vacate the porch area.  It is clear that he then waited several minutes and when

there was virtually no compliance with his previous directive, he again approached the

crowd congregated on the porch and made an announcement that people must leave the

porch area.  On the second occasion Officer Bredow recollects that he did not make a

qualification that those who were Starbucks customers on the porch could remain.  It is

also undisputed that none of the three Plaintiffs left the porch area either at Officer

Bredow's first direction or at his second direction.  It was only after Officer Bredow had

made at least two directives t the crowd (including Plaintiffs) on the porch that

Mr. Welch arrived.

Mr. Welch identified himself as the owner of the premises, learned from

Officer Bredow what had already taken place, and then volunteered himself to make a

-8-

general announcement to those on the porch to leave.  Having identified himself as the owner Mr. Welch offered himself up as a complainant.  It is undisputed that Mr. Welch made at least two announcements to the people on the porch including the Plaintiffs.  He pointed out the "No Loitering", "No Trespassing", and "Starbucks Patrons Only" signs clearly posted in the porch area.  He was not only met with resistance, he was met with the refusal of the three Plaintiffs to leave the area.  Mr. Welch had identified himself as the owner and his ownership status was challenged.  It is also undisputed that the police were witnesses to the communications of Mr. Welch to the crowd and to the three Plaintiffs.  It is also not disputed that Mr. Welch directed his orders to vacate the premises to the three Plaintiffs.

At that time, Mr. Welch was acting in the capacity of property owner.  It is not only undisputed that he was the property owner but the legal documents conclusively establish that the porch in question was a common area of the Fountain House property which was not leased to Starbucks.  Rather, it was under the dominion and control of the owners of the building, with Robert Welch undoubtedly being one of the owners.

After at least four directives were given (perhaps more) the police officers, who had witnessed the entirety of events, were asked by Mr. Welch to arrest the three Plaintiffs who had not complied with any of the directives, be they made by the police or by Mr. Welch himself.  The police then asked Mr. Welch to identify those three Plaintiffs.  He pointed them out.  They were arrested.  Plaintiff Fisher was arrested in the porch area.  It is alleged by the remaining Plaintiffs, Walton and Rosenberg, that they had complied with the final directive made and were either in the process of leaving the

-9-

property or had left the property.  Nonetheless, Plaintiffs Walton and Rosenberg had already committed the offenses.  It was not up to Mr. Welch to decide whether or not the arrest should be made.  It was not up to Mr. Welch to decide whether or not an arrest should be made after the non-compliance with the first directive, the second directive, the third directive, or the fourth directive.  It is undisputed that Officer Bredow was present for all of the directives made to the Plaintiffs.  It is undisputed that Officer Carlin was present for the directives made by Mr. Welch, the owner of the property.

According to Officer Carlin, he had not spoken to Mr. Welch prior to his arrival at the Fountain House that day.  Officer Carlin had no formulated a plan with Mr. Welch about arresting the individuals who were there.  He had never learned from any source that Mr. Welch had made a plan with Officer Bredow to have anyone arrested.  He also stated that he made an independent decision to make the arrests and that he did not simply rely on Mr. Welch's request that the Plaintiffs be arrested.  See Carlin Deposition pps. 66-73.).

In <u>Moore vs. The Marketplace Restaurant, Inc.</u>, 754 F. 2d 1336 (7th Cir. 1985) it was alleged that a restaurant owner had conspired with the police to deprive the Plaintiff patrons of their civil rights.  In that case, the Plaintiffs, who were patrons at the Defendant's restaurant, claimed that they had to wait an extraordinarily long period of time to be served their meal.  Specifically, they said they had to wait forty-five minutes before they were served their soups and salads.  Further, after several hours, they complained about their meals not having arrived and were met with profane remarks by the restaurant personnel.  According to the Plaintiffs in that case, they offered to pay for

-10-

their soups, salads and drinks but the restaurant management demanded that they pay for the entire meal that they had ordered. According to the Plaintiffs the Defendant told the Plaintiffs that he would get his money and would take care of the Plaintiffs in his "own way" if they refused to pay for the entire meal. Faced with this threat, the Plaintiffs left the restaurant. The restaurant owner called the police and even agreed to sign a criminal complaint against the Plaintiffs. Acting on the information in the criminal complaint filed by the Defendants, the police department arrested the Plaintiffs for the crime of theft of services. Upon being transported to jail, one of the Plaintiffs stated in her deposition that one of the deputies told her that the situation should never have happened and if it was the officer in the Plaintiffs' shoes, he would sue.

The Plaintiffs, in the defending summary judgment motion of the restaurant owner, pointed to two facts which they considered evidence of a conspiracy so as to make the restaurant owner a "state actor". They pointed out his threat that he would "take care of them in his own way" and to the statement of the arresting police officer stating that "if he were the Plaintiffs, he would sue.". Moore at 1352. The Moore Court stated that a conspiracy may be demonstrated by circumstantial evidence, *citing* Hampton vs. Hanrahan, 600 F. 2d 600 (7th Cir. 1979). However, the Court pointed out that given conflicting evidence in the record as to what occurred at the restaurant it was possible that the restaurant owner may very well have given less than reliable information regarding the incident to the police officers. However, providing false information to an arresting officer, they pointed out, is not, by itself, sufficient to state a claim against a private party under § 1983. *Citing* Butler vs. Goldblad Brothers, Inc., 589 F. 2d 323,

-11-

326-327 (7th Cir. 1978), *cert. denied.* 444 U.S. 841, 100 S. Ct. 82, 62 L. Ed. 2d 53

(1979).  That court correctly pointed out that bare allegations of certain statements made

by the Defendants without any other proof of a conspiracy is insufficient to sustain a

conspiracy claim.  There must be some evidence of some concerted effort or plan

between the private party and the state.  In <u>Moore</u> summary judgment for the defendant

private individuals on the § 1983 claim was granted.

       Contrasting the circumstances with <u>Moore</u> to this matter, in this case, the

police actually witnessed all that occurred.   Unlike <u>Moore</u> where a criminal complaint

was made out to events not witnessed by the police, here, the private complaint made out

by Defendant Robert Welch merely reflected that which the police had already observed.

In fact, the police had observed the defiant behavior prior to the arrival of Mr. Welch on

the scene.

       In its <u>Abbott vs. Latshaw</u>, 164 F. 3d 141 (3rd Cir. 1998) decision, this

Court examined an instance where, from the outset, the property owner, Laurie Latshaw,

had set out to manipulate law enforcement in to furthering her desire to deprive her ex-

husband, Mark Abbott, of access to a vehicle that was registered in her name but whose

note was paid by her ex-husband.  <u>Id</u>. at 144.  Ms. Latshaw from the outset had an interest

in taking possession of the vehicle from Mr. Abbott without due process of law.

Ms. Latshaw had intended to utilize the constable, acting in his official capacity, to

further this goal and had intended to compensate him for his efforts.  The fact this court

noted particularly that the actions of Laurie Latshaw in that case bore the mark of a

conspiracy.  Here, there is no such collusion or conspiracy between the police and

Mr. Welch.  Mr. Welch was placed in the situation of being a property owner attempting

to enforce his rights as a property owner.  He specifically asked the Plaintiffs to leave his

property.  They did not.  He specifically pointed out the "No Loitering" signs to the

Plaintiffs.  When the Plaintiffs declined to obey his instruction as a property owner, they

were pointed out to the police by Mr. Welch as being the offenders.  The police, who had

observed all of this activity independently, apparently concurred with Mr. Welch and

made the arrests, believing in good faith, that they had probable cause to make the arrests.

Certainly, the criminal behavior displayed by the Plaintiffs was actually witnessed by the

police so that they could make their own independent judgment as to whether or not to

make an arrest.  In effect, Mr. Welch was simply acting as a property owner who was a

witness.

The Plaintiffs are unable to point to any circumstantial evidence of a

conspiracy between Mr. Welch and the police to deprive them of their constitutional

rights.

**B.** **A ruling in favor of the Plaintiffs in this case will have a chilling effect upon a property owner's right to exercise control over his or her interests**.

The circumstances of this case provide no evidence to support and elicit

conspiratorial contact between the police and Mr. Welch nor any plan to infringe upon

the rights of another.  Instead, on the evening in question, the Plaintiffs' arrests were

-13-

solely an example of the police upholding a property owner's fundamental right to have control over his or her own interests.

This case presents nothing more than evidence of a private citizens lodging of a complaint against individuals who were on his property and were asked to leave but refused to do so. It is undisputed that Mr. Welch asked these individuals to leave his property. Repeatedly, they refused to leave. Only when they were being pointed out as arrestees, did they decide to migrate from the property. The Constitution does not provide protection to persons who willfully ignore the wishes of a property owner and additionally create a public safety hazard in doing so.

If, as a matter of law, Mr. Welch is not dismissed from this case, then, as a matter of law, no party would ever feel secure in filing a private criminal complaint against any individual for fear that they would be subject to a civil rights action such as this one. If, as a matter of law, Mr. Welch is not summarily dismissed from this case then the message would be sent that where the police have first asked loiterers to vacate a private property, where "No Loitering" and "No Trespassing" signs are posted, where the police witnessed a property owner asking persons to leave his property, and where the property owner requests that those who refuse to obey his directive be arrested a conspiracy exists between the police officers and the private citizen so as to make the private citizen exposed to a civil rights action as a state actor.

-14-

### C.    **Pendant State Law Claims**:

Plaintiffs have premised their state law claims upon supplemental jurisdiction pursuant to 28 U.S.C. § 1367.  According to subsection (c)(3) of that section, Count II of the Plaintiffs' Complaint against Defendant Robert Welch should be dismissed in that no § 1983 action against Defendant Welch is capable of being proven.

Furthermore, should this Court rule in favor of Defendant Jerold Bredow's Motion for summary Judgment, finding as a matter of law that the Plaintiffs were arrested and detained with probable cause, then the issue of whether or not Defendant Robert Welch impermissibly conspired with the police to deprive the Plaintiffs of their Constitutional rights is rendered moot and Summary Judgment would necessarily have to be entered in favor of Defendant Robert Welch.

### V.    **CONCLUSION**:

Plaintiffs, faced with the consequences of their profane and boisterous refusal to leave the property of Defendant Welch after a reasonable request to do so, have brought this civil rights action against a private person, Robert Welch, the property owner.  Plaintiffs present no evidence by which this Court could conclude that a conspiracy existed between the Doylestown Police and Mr. Welch to deprive the Plaintiffs of their Constitutional rights. Accordingly, Defendant Robert Welch respectfully request this Court enter as its own, the

proposed Order attached hereto, granting him Summary Judgment as to all Counts of

Plaintiffs' Complaint.

**FRANCIS R. GARTNER & ASSOCIATES**


**BY:** _____

    **TED D. BROOM, ESQUIRE**
    **IDENTIFICATION NO. 36417**
    **ATTORNEY FOR DEFENDANT**
    **LAW OFFICES**
    **FRANCIS R. GARTNER & ASSOCIATES**
    **UNION MEETING III**
    **960-B HARVEST DRIVE, SUITE 215**
    **BLUE BELL, PA  19422-1969**
    **(215) 619-4362**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| **MATTHEW JOHN FISHER,** | : | |
| **SETH ROSENBERG, by his next** | : | **02-CV-4007** |
|   friend **IRA ROSENBERG; and** | : | |
| **JAMES WALTON** | : | |
|  | : | |
|      **v.** | : | |
|  | : | |
| **BOROUGH OF DOYLESTOWN; and** | : | |
| **POLICE OFFICER JEROLD BREDOW** | : | |
|   **ind. and as a police officer of the** | : | |
|   **Borough of Doylestown; and** | : | |
| **ROBERT WELCH** | : | |
|  | : | |

**C E R T I F I C A T E  OF  S E R V I C E**

**TO THE PROTHONOTARY**:

     **TED D. BROOM, ESQUIRE**, attorney for Defendant, **ROBERT WELCH**,

hereby certifies that a true and correct copy of Defendant's Motion for Summary Judgment

was served upon all counsel of record on the attached list, by way of regular first class mail,

postage prepaid on September 15, 2003.

                   **FRANCIS R. GARTNER & ASSOCIATES**


         **BY:**     _____
               **TED D. BROOM, ESQUIRE**
               **IDENTIFICATION NO. 36417**
               **ATTORNEY FOR DEFENDANT**
               **LAW OFFICES**
               **FRANCIS R. GARTNER & ASSOCIATES**
               **UNION MEETING III**
               **960-B HARVEST DRIVE, SUITE 215**
               **BLUE BELL, PA  19422-1969**
               **(215) 619-4362**

## LIST OF COUNSEL

DAVID RUDOVSKY, ESQUIRE
**KAIRYS, RUDOVSKY, EPSTEIN, MESSING & RAU**
924 CHERRY STREET, SUTIE 500
PHILADELPHIA, PA  19107

Michael C. Schwartz, Esquire
**JAMES, JARRETT & SCHWARTZ, P.C.**
Stephen Girard Building
21 South 12th Street, 9th Floor
Philadelphia, PA  19107
 (Attorneys for Plaintiffs)

John P. Gonzales, Esquire
**MARSHALL, DENNEHEY, WARNER, COLEMAN & GOGGIN**
One Montgomery Plaza, Suite 1002
Norristown, PA  19401
(Attorney for Defendants,
CO-DEFENDANT:    BOROUGH OF DOYLESTOWN
CO-DEFENDANT:    POLICE OFFICER JEROLD BREDOW)