**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MATTHEW JOHN FISHER, SETH ROSENBERG, by his next friend Ira Rosenberg, JAMES WALTON,** | : : : : : : : : : : : : : : : : : : | **CIVIL ACTION** No. 02-CV-4007 |
| **Plaintiffs,** | | |
| v. | | **JUDGE HERBERT J. HUTTON** |
| **BOROUGH OF DOYLESTOWN, POLICE OFFICER JEROLD BREDOW, individually and as a police officer of the Borough of Doylestown, ROBERT WELCH,** | | |
| **Defendants.** | | |

## ORDER

**AND NOW**, this _____ day of _____, 2003, upon consideration of Defendant Robert Welch's Motion for Summary Judgment, **IT IS ORDERED** that the Motion is **DENIED**.

                                                                       **BY THE COURT:**

                                                                        **HERBERT J. HUTTON, J.**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MATTHEW JOHN FISHER, SETH ROSENBERG, by his next friend Ira Rosenberg, JAMES WALTON, | : : : | |
| Plaintiffs, | : | CIVIL ACTION |
| | : | No. 02-CV-4007 |
| v. | : | |
| BOROUGH OF DOYLESTOWN, POLICE OFFICER JEROLD BREDOW, individually and as a police officer of the Borough of Doylestown, ROBERT WELCH, | : : : : : | JUDGE HERBERT J. HUTTON |
| Defendants. | : : | |

**PLAINTIFFS' RESPONSE TO**
**DEFENDANT ROBERT WELCH'S MOTION FOR SUMMARY JUDGMENT**

Plaintiffs Matthew John Fisher, Seth Rosenberg, and James Walton, by their counsel, hereby respond to Defendant Robert Welch's Motion for Summary Judgment and respectfully request that, for the reasons more fully set forth in the attached Memorandum of Law and Exhibits, the Court deny the Motion.

Respectfully submitted,

/s Jonathan H. Feinberg
David Rudovsky
I.D. No. 15168
Jonathan H. Feinberg
I.D. No. 88227
KAIRYS, RUDOVSKY, EPSTEIN & MESSING, LLP
924 Cherry Street, Suite 500
Philadelphia, PA 19107
(215) 925-4400

Michael C. Schwartz
I.D. No. 39475
JAMES, JARRETT & SCHWARTZ, P.C.
Stephen Girard Building
21 South 12th Street, 9th Floor
Philadelphia, PA 19107-3603
(215) 751-9865

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MATTHEW JOHN FISHER, SETH ROSENBERG, by his next friend Ira Rosenberg, JAMES WALTON, | : : : : | CIVIL ACTION No. 02-CV-4007 |
| Plaintiffs, | : : | |
| v. | : : | JUDGE HERBERT J. HUTTON |
| BOROUGH OF DOYLESTOWN, POLICE OFFICER JEROLD BREDOW, individually and as a police officer of the Borough of Doylestown, ROBERT WELCH, | : : : : : : | |
| Defendants. | : : | |

**PLAINTIFFS' MEMORANDUM OF LAW IN RESPONSE
TO DEFENDANT ROBERT WELCH'S MOTION FOR SUMMARY JUDGMENT**

**I.     INTRODUCTION**

This action arises out of an incident on September 8, 2000, in which Defendant Police Officer Jerold Bredow, acting in concert and conspiracy with Defendant Robert Welch, effectuated the unlawful arrest of Plaintiffs Matthew John Fisher, Seth Rosenberg, and James Walton. Plaintiffs' Complaint, filed on July 18, 2002, states two counts against all Defendants: (1) a claim under 42 U.S.C. § 1983 that Defendants violated Plaintiffs' rights under the Fourth and Fourteenth Amendments to be free from unlawful arrest and detention, and malicious prosecution and (2) state-law claims of assault, battery, unlawful arrest, and malicious prosecution.

On October 28, 2002, Defendant Welch filed a Motion to Dismiss the Complaint under Fed. R. Civ. P. 12(b)(6). The Court denied the Motion in a Memorandum and Order issued on May 20, 2003. *Fisher v. Borough of Doylestown*, 2003 WL 22134790 (E.D. Pa. May 20, 2003).

On April 3, 2003, Defendants Bredow and Borough of Doylestown filed a Motion for Summary Judgment. Plaintiffs subsequently filed their response, and the Motion is currently pending before the Court.

In the instant motion, filed on September 15, 2003, Defendant Welch argues that the facts support judgment as a matter of law in his favor. Plaintiffs submit that, as demonstrated below, Defendant Welch's motion ignores key factual disputes and portrays the facts in the light most favorable to the defense. When the facts and inferences drawn therefrom are viewed in the light most favorable to Plaintiffs, as they must be in this procedural posture, they clearly support Plaintiffs' federal constitutional and state-law claims. Accordingly, Defendant Welch's Motion for Summary Judgment must be denied.

**II.     FACTS**

The incident giving rise to this lawsuit took place at a Starbucks Café, on North Main Street in Doylestown, Pennsylvania. The core of Plaintiffs' claims for relief against Defendant Welch is that, upon Defendant Welch's insistence, they were arrested without any legal justification for a purported failure to leave the Starbucks when ordered to do so. Although Defendant Welch contends that Plaintiffs were arrested for failing to leave the Starbucks upon the orders of Defendants Bredow and/or Welch, as the facts show, each of the Plaintiffs left the Starbucks when ordered to do so, and, as such, they committed no crimes providing legal justification for an arrest.

The Starbucks at which the incidents in question took place is located on the first floor of a building called "The Fountain House." Defendant Welch and his brother are the shareholders in Fountain House Limited Partnership, which owns the building and which leased the first floor of the building to Starbucks. Dep. of Robert Welch, March 11, 2003, at 7-8, 15-18 ("Dep. RW,"

excerpts appended at Ex. A).[1]  The porch area of The Fountain House was not specifically leased to Starbucks, but Starbucks was permitted to provide outdoor seating to its customers there if seating was permitted by local authorities.  Dep. RW at 17; *In re Seth Rosenberg* Hr'g Tr., Dec. 8, 2000, at 22-23 ("SR Hr'g Tr.," excerpts appended at Ex. B).[2]

On September 8, 2000, Plaintiff Matthew Fisher arrived at Starbucks at approximately 6:00 p.m. and sat at a table located on the porch with his friends, Shannon Hays, Laura Reeves, and Matt St. Leger.  Dep. of Matthew Fisher, Jan. 14, 2003, at 16-17 ("Dep. MF," excerpts appended at Ex. C).  At that time, Plaintiffs Seth Rosenberg and James Walton were seated on the "steps" of the porch; they were not blocking anyone's entry into or exit from the establishment.  Dep. MF at 18.

A short time after Plaintiff Fisher arrived at the Starbucks and took a seat on the porch, Defendant Bredow, approached the porch and asked the crowd of people that had gathered there to leave the premises if they had not purchased any Starbucks products.  Dep. MF at 19-20, 22.  In response, Mr. Fisher purchased an iced tea from Starbucks and returned to his seat.  Dep. MF at 20-21.  After asking those people on the porch who had not purchased Starbucks products to leave, Bredow returned to his patrol car in the parking lot in front of the porch.  Dep. MF at 23.

---

[1] Exhibits A through H are appended to Plaintiffs' May 7, 2003, Response to Motion for Summary Judgment of Defendants Borough of Doylestown and Police Officer Jerold Bredow.  Those Exhibits contain the following:

| Exhibit A | Excerpts of Deposition of Robert Welch |
| Exhibit B | Excerpts of *In re Seth Rosenberg* Hearing Transcript |
| Exhibit C | Excerpts of Deposition of Matthew Fisher |
| Exhibit D | Excerpts of Deposition of Seth Rosenberg |
| Exhibit E | Excerpts of Deposition of James Walton |
| Exhibit F | Excerpts of Deposition of Shannon Hays |
| Exhibit G | Charging Documents |
| Exhibit H | Excerpts of Deposition of James Donnelly |

[2] Starbucks did apply for, and, following a hearing, received permission from the Doylestown Zoning Hearing Board to allow seating on the porch.  SR Hr'g Tr. at 22-23.

3

Approximately ten or fifteen minutes later, Defendant Welch, with Defendant Bredow and another Doylestown police officer, Lance Carlen, approached the porch. Dep. MF at 66. Defendant Welch made a general announcement that if anyone did not have a Starbucks product, they would have to leave the premises. Dep. MF at 68. Defendant Welch then specifically asked Plaintiff Fisher to leave. Dep. MF at 66-68. Plaintiff Fisher protested that he was a patron, because he had just purchased and consumed a Starbucks iced tea. Dep. MF at 24. At that point, Defendant Bredow "reinforced" what Mr. Welch had said, stating: "[I]f you don't leave, I'm going to arrest you"; Mr. Fisher responded by leaving the porch and walking into the alley, off of the property. Dep. MF at 25-26. Mr. Fisher remained in the alley, off of Starbucks property, for approximately five minutes, at which point Officer Carlen arrested him. Dep. MF at 28.

At the time Defendant Bredow first instructed the crowd gathered on the porch outside the Starbucks that people who had not purchased Starbucks products would have to leave, Plaintiff Rosenberg and Plaintiff Walton were sitting on the ledge of the porch. Dep. of Seth Rosenberg, Jan. 14, 2003, at 11-12 ("Dep. SR," excerpts appended at Ex. D); Dep. of James Walton, Jan. 14, 2003, at 11-12 ("Dep. JW," excerpts appended at Ex. E). In response, Plaintiffs Rosenberg and Walton left immediately and walked down State Street, where they encountered a friend, Kolter Hodges. Dep. SR at 11, 13; Dep. JW at 12. The three then returned to Starbucks, where Mr. Hodges purchased a brownie and Plaintiffs Rosenberg and Walton purchased a "Frappuccino" to share. Dep. SR at 13-14; Dep. JW at 13.[3]

After Hodges, Rosenberg and Walton made their purchases, they returned to the porch, shortly after which, Defendant Bredow approached them and stated that non-customers would

---

[3] According to witness Shannon Hays, who had worked at Starbucks, the Frappuccino purchased by Plaintiffs Rosenberg and Walton to share was a "Venti caramel Frappuccino, a really big one." Dep. of Shannon Hays, April 9, 2003, at 21 ("Dep. SH," excerpts appended at Ex. F). Ms. Hays explained that the Frappuccino was twenty ounces, and is Starbucks' largest drink. Dep. SH at 88.

4

have to leave the premises. Dep. SR at 14-15. Mr. Hodges showed Defendant Bredow the brownie he had purchased, and Plaintiff Rosenberg showed Defendant Bredow the Frappuccino that he and Plaintiff Walton had purchased. Dep. SR at 14-15. Defendant Bredow then returned to his car. Dep. SR at 15.

Shortly thereafter, Defendant Welch arrived and, in Plaintiff Rosenberg's view, appeared to be "very angry." Dep. SR at 16. When Defendant Welch approached, Mr. Hodges again presented the brownie, and Mr. Rosenberg presented the Frappuccino, but Mr. Welch told them to leave regardless. Dep. SR at 16. Mr. Rosenberg testified:

> He [Welch] did say that he was the owner of this place. To me it was implied that he was the owner of Starbucks. And I got up and left because it seemed as if he had enough authority to make it so; whether or not I had purchased anything or not.

Dep. SR at 17. When leaving the porch, Plaintiff Walton asked why, if he had purchased a Starbucks product, he had been instructed to leave. Dep. JW at 20; Dep. SR at 59. Neither Plaintiff Rosenberg nor Plaintiff Walton, who both left immediately, Dep. JW at 21; Dep. SR at 60, acted in a belligerent manner or made any gestures to Defendant Welch; the only raised voice was that of Defendant Welch. Dep. SR at 59-60.[4]

After Plaintiffs Rosenberg and Walton left the property, they proceeded to the same alley where Plaintiff Fisher had gone upon departing from Starbucks, and where Plaintiff Fisher had been arrested. Dep. SR at 19; Dep. JW at 21. Subsequent to Plaintiff Fisher's arrest, Plaintiff Rosenberg heard Defendant Welch instruct Defendant Bredow whom to arrest:

> Mr. Welch had instructed the officers on who to arrest. He had instructed the officer, Bredow, to arrest James. James was arrested first. Officer Bredow then pointed to me and said, what about him? And Mr. Welch said, yes, him, too. And then the

---

[4] According to Plaintiff Rosenberg, Mr. Hodges was not instructed to leave: "Kolter simply presented his brownie and he was allowed to stay for I don't know what reason. I guess a brownie is better than Frappuccino." Dep. SR at 17.

5

> Frappuccino was taken out of my hand, I was taken onto Starbucks property, I was cuffed and put into the police car.

Dep. SR at 19-20; *see also* Dep. JW at 24 (stating that Defendant Welch, while talking to Defendant Bredow, motioned toward Plaintiffs Walton and Rosenberg before they were arrested).

In addition to the testimony of Plaintiffs Rosenberg and Walton, the evidence of record shows that Plaintiffs were arrested only upon Defendant Welch's insistence. Matthew St. Leger, who was seated at a Starbucks table and witnessed the entire incident, testified that he overheard a conversation between Defendant Welch, Defendant Bredow and Officer Carlen. Dep. of Matthew St. Leger, May 7, 2003, at 31-32 ("Dep. MSL," excerpts appended at Ex. I).[5] Mr. St. Leger stated that Defendant Welch was speaking "quite loudly" and was upset that the police "let these kids go," and "was questioning whether the police were doing their jobs by not arresting them." *Id.* at 32. Mr. St. Leger testified:

> He said he owned the building. He said these kids are trespassing, and that he didn't want – I don't know how he referred to them, that element around his building. That's not his exact words.
>
> That's – he was referring to them as being some sort of less than or lower class or something. I didn't really understand what he was saying. He made it clear the he didn't want them there, and that he wanted them to be arrested.

Dep. MSL at 32-33.

Shannon Hays, who also witnessed the arrests of the Plaintiffs and overheard the conversation between Defendant Welch, Defendant Bredow and Officer Carlen, testified that, in response to Defendant Welch's statements that he wanted the Plaintiffs arrested, the officers stated that, because the Plaintiffs were leaving the premises, the officers had no grounds to arrest.

---

[5] Exhibit I is appended to this document.

6

Dep. SH at 34-35, 49, 74-75. Defendant Welch replied, in turn, that he owned "half of Doylestown" and insisted that the officers arrest Plaintiffs Fisher and Walton, which they did. Thereafter, Mr. Welch pointed out Seth Rosenberg, and an officer arrested him. Dep. SH at 34-35.[6]

This account of the conversation between Defendant Welch and the officers is echoed in the testimony of Laura Reeves at the juvenile delinquency proceedings for Plaintiff Rosenberg:

> Mr. Welch said that he was the – the officers were already talking to [Plaintiff Fisher] and then the wanted them to leave and Mr. Welch, he looked a little upset, he was saying something like, you know, you know these kids are here every day. I pour money into this borough. He is like I need someone as an example. And I was listening to this like, but the officers were like "We can't do that. We can't just arrest someone for no reason. We can't make examples out of people."

SR Hr'g Tr. at 84-85.

It is undisputed that, after their arrests, Plaintiffs Rosenberg and Walton were detained for approximately two hours, and Plaintiff Fisher was detained for one hour. Complaint at ¶ 14. Plaintiffs were charged with failure of disorderly persons to disperse, 18 Pa. C.S.A. § 5502, and defiant trespass, 18 Pa. C.S.A. § 3503. *See* Charging Documents, appended at Ex. G. It is undisputed that all criminal proceedings were terminated favorably to the Plaintiffs: a District

---

[6] The entirety of Ms. Hays' testimony on this point is as follows:

> …Bob Welch had pulled up and parked his car and got out and came up to the cops. He was just kind of – he didn't say anything. He just stood there as the kids were leaving. Then he told the cops he wanted them arrested for trespassing, and the cops informed him that because they were leaving, they had no real grounds – like they informed them that they had to leave and they were leaving, so they had no grounds to arrest them.
>
> That's when Bob Welch said, I own half of Doylestown and you better arrest them now. They proceeded to arrest James and Matt. Then he pointed out Seth, that he wanted Seth arrested, too, and they arrested Seth, who was totally clueless as to what was going on.

Dep. SH at 34.

7

Justice dismissed the criminal charges against Plaintiff Fisher at a hearing in November 2000, Complaint at ¶ 15; a District Justice dismissed the charges against Plaintiff Rosenberg at a hearing in December 2000, *id.*; and the criminal charges against Plaintiff Walton resulted in a juvenile "non-adjudication." *Id.*

### III.    STANDARD OF REVIEW

Under Fed. R. Civ. P. 56(c), summary judgment may only be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In considering the instant motion for summary judgment, the Court must evaluate the evidence "in the light most favorable to the non-moving party." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). This means that "all reasonable inferences are drawn in the light most favorable to the non-moving party." *Super Fresh Food Markets, Inc. v. United Food & Commercial Workers Local Union 1776*, 2003 WL 751189, at *4 (E.D. Pa. Feb. 7, 2003) (Hutton, J.) (citing *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir.1992)). When drawing inferences from the evidence presented, the Court "may not consider the credibility or weight of the evidence…even if the quantity of the moving party's evidence far outweighs that of its opponent." *Id*. If the evidence and inferences drawn therefrom are "such that a reasonable jury could return a verdict for the nonmoving party, then there is a genuine issue of fact" and summary judgment must be denied. *Id*. at *3 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

IV.   **ARGUMENT**

Plaintiffs' claims against Defendant Welch under § 1983 allege a conspiracy to unlawfully arrest and detain Plaintiffs in violation of the Fourth and Fourteenth Amendments. A private party," like Defendant Welch, "who willfully participates in a joint conspiracy with state officials to deprive a person of a constitutional right acts 'under color of state law' for purposes of § 1983." *Abbott v. Latshaw*, 164 F.3d 141, 147-48 (3d Cir. 1998); *see also Dennis v. Sparks*, 449 U.S. 24, 27-28 (1980) ("Private persons, jointly engaged with state officials in the challenged action, are acting…'under color' of law for purposes of § 1983 actions."). A civil rights conspiracy is characterized by "a combination of two or more persons to do a criminal act, or to do a lawful act by unlawful means or for an unlawful purpose," *Marchese v. Umstead*, 110 F. Supp. 2d 361, 371 (E.D. Pa. 2000) (internal quotations omitted), "the principal element of which is an agreement between the parties 'to inflict a wrong against or injury upon another,' and 'an overt act that results in damage.'" *Hanrahan v. Hampton*, 600 F.2d 600, 620-21 (7th Cir. 1979), *rev'd on other grounds, Hanrahan v. Hampton*, 446 U.S. 754 (1980) (internal citations omitted).

Accordingly, the question for the Court in resolving the instant motion is whether the evidence, taken in the light most favorable to Plaintiffs, shows (1) that the actions of the Defendants resulted in a violation of Plaintiffs' constitutional rights, and (2) that Defendant Welch "jointly engaged" with state officials to accomplish the constitutional violation(s). *Dennis*, 449 U.S. at 27-28.

Plaintiffs' argument on the first prong of this analysis is set forth in their previously filed response to the Motion for Summary Judgment of Defendants Borough of Doylestown and Police Officer Jerold Bredow, s*ee* Pls.' Resp. at 7-11, and need not be repeated in full here. In

summary, Plaintiffs' argument is that they were arrested for crimes that can only be committed upon an actor's refusal to leave a place in compliance with an authorized order. Because the evidence shows that Plaintiffs left the Starbucks when they were ordered to do so, there was no probable cause to believe that they had committed, or were committing, any crimes. Without probable cause, the arrest and subsequent detention of Plaintiffs constituted a violation of the Fourth and Fourteenth Amendments.

On the second prong, there is more than sufficient evidence in the record demonstrating that Defendant Welch "jointly engaged" with Defendant Bredow and Officer Carlen to effectuate these unconstitutional arrests. In particular, the testimony of Matthew St. Leger, Shannon Hays, and Laura Reeves – which, regrettably is never addressed, let alone even mentioned, in Defendant Welch's motion – demonstrates that the officers initially declined to arrest Plaintiffs because there were no grounds for a legal arrest. Dep. MSL at 31-33; Dep. SH at 34-35, 49, 74-75; SR Hr'g Tr. at 84-85. Despite the officers' reluctance to effect such unlawful arrests, Defendant Welch insisted that the officers take Plaintiffs into custody. Indeed, Defendant Welch went so far as to issue a veiled threat to the officers by emphasizing his stature in the borough of Doylestown. Because it was only after this "conversation" wherein Defendant Welch informed the officers that he owned "half of Doylestown" that Plaintiffs were arrested, Defendant Welch is clearly liable for a § 1983 civil rights conspiracy. *See Abbott*, 164 F.3d at 148 (holding that allegation that state actor acted at "at the instance and request of" a private citizen was sufficient to implicate private citizen in § 1983 civil rights conspiracy).

Defendant Welch's only substantive argument that he is entitled to summary judgment is that he was acting as a private "complainant" reporting the Plaintiffs as trespassers on his property. This argument, however, is based entirely on an improper view of the facts in the light

10

most favorable to the moving party.  As stated above, when the facts are viewed in the light most favorable to Plaintiffs – as they must be – it is clear, in the first instance, that Defendant Welch was acting nothing like a "complainant."  On the contrary, he *instructed* the officers to arrest plaintiffs and backed up his instruction with a veiled threat citing his stature in the community.[7] Moreover, when the facts are viewed most favorably to Plaintiffs, it is clear that Plaintiffs did not trespass on Defendant Welch's property, but, instead, left the property upon an authorized order to do so.

Defendant Welch provides no factual support or legal authority that would support summary judgment in this case.  Plaintiffs' federal civil rights claims against Defendant Welch are amply supported by the record and should be permitted to proceed to trial.  For that same reason, Plaintiffs' state law claims – which Defendant Welch only challenges in a derivative manner under 28 U.S.C. § 1367(c)(3) – should also proceed to trial.

---

[7] For this reason, Defendant Welch's citation to *Moore v. Marketplace Restaurant, Inc.*, 754 F.2d 1336 (7th Cir. 1985), in inapposite.  In *Moore*, the court dismissed the plaintiffs' civil rights conspiracy claims against the private restaurant owner because the evidence only showed that the restaurant owner might have provided false information to a police officer.  *Id.* at 1352-53.  In this case, Defendant Welch did something much different than provide false information: he instructed police officers to conduct an unlawful arrest.

## V. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendant Robert Welch's Motion for Summary Judgment .

                                Respectfully submitted,

DATED: September 25, 2003        s/ Jonathan H. Feinberg
David Rudovsky
I.D. No. 15168
Jonathan H. Feinberg
I.D. No. 88227
KAIRYS, RUDOVSKY, EPSTEIN & MESSING, LLP
924 Cherry Street, Suite 500
Philadelphia, PA 19107
(215) 925-4400

Michael C. Schwartz
I.D. No. 39475
JAMES, JARRETT & SCHWARTZ, P.C.
Stephen Girard Building
21 South 12th Street, 9th Floor
Philadelphia, PA 19107-3603
(215) 751-9865

**CERTIFICATE OF SERVICE**

  I, Jonathan H. Feinberg, hereby certify that, on September 25, 2003, Plaintiffs' Response to Defendant Robert Welch's Motion for Summary Judgment, and Memorandum of Law in support thereof was filed electronically; that paper copies of the exhibits to said Memorandum were filed with the Clerk; and that paper copies of said Response, Memorandum and exhibits were served via first-class mail upon counsel as follows:

    Joseph J. Santarone, Jr., Esq.
    John P. Gonzalez, Esq.
    Marshall Dennehey Warner Coleman & Goggin
    One Montgomery Plaza, Ste. 1002
    Norristown, PA  19401
    *Counsel for Defendants Borough of Doylestown*
    *and Police Officer Jerold Bredow*

    Ted D. Broom, Esq.
    Francis R. Gartner & Associates
    Union Meeting III, Suite 215
    960-B Harvest Drive
    Blue Bell, PA  19422-1969
    *Counsel for Defendant Robert Welch*


        /s Jonathan H. Feinberg
        Jonathan H. Feinberg