IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MATTHEW JOHN FISHER, et al.        :        CIVIL ACTION
                                   :
            v.                     :
                                   :
BOROUGH OF DOYLESTOWN, et al.      :        NO. 02-4007

### MEMORANDUM AND ORDER

HUTTON, S.J.                                    October 28, 2003

Plaintiffs Matthew John Fisher, Seth Rosenberg, and James Walton are suing Defendants Borough of Doylestown, Doylestown Police Officer Jerold Bredow, and Robert Welch, alleging a claim under 42 U.S.C. § 1983 and state law claims of assault, battery, unlawful arrest, and malicious prosecution. Presently before the Court is Defendant Bredow's Motion for Summary Judgment.[1]

## I. BACKGROUND[2]

The incident giving rise to this lawsuit took place at a Starbucks café in Doylestown, Pennsylvania. The Starbucks café is located on the first floor of a building owned by Defendant Robert Welch. The porch area of the building was not specifically leased to Starbucks but Starbucks was permitted to provide outdoor seating

---

[1]    Defendant Borough of Doylestown has also moved for summary judgment. However, Plaintiffs have agreed to the dismissal from this lawsuit of the Borough of Doylestown.

[2]    To the extent the facts are in dispute, they are presented in the light most favorable to the Plaintiffs. See Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992), cert. denied, 507 U.S. 912, 113 S. Ct. 1262, 122 L. Ed. 2d 659 (1993).

to its customers on the porch if seating was permitted by local authorities.

At approximately 6 p.m. on September 8, 2000, Plaintiff Matthew Fisher arrived at Starbucks and sat at a table located on the porch with his friends, Shannon Hays, Laura Reeves, and Matt St. Ledger. Plaintiffs Seth Rosenberg and James Walton arrived at approximately the same time and sat on the steps of the porch, but they were not blocking the entry into Starbucks. Shortly after, Defendant Police Officer James Bredow approached the porch and asked the crowd gathered there to leave the premises if they had not purchased any Starbucks products. Officer Bredow then returned to his patrol car in the parking lot in front of the porch.

In response to Officer Bredow's request, Mr. Fisher purchased an iced tea from Starbucks and returned to his seat. Approximately ten minutes later, Officer Bredow again approached the porch, accompanied by Mr. Welch and another Doylestown police officer, Lance Carlen. Mr. Welch made a general announcement that if anyone did not have a Starbucks product, they would have to leave the premises. Mr. Welch then specifically asked Mr. Fisher to leave. Mr. Fisher protested that he was a patron because he had just purchased and consumed a Starbucks iced tea. At that point, Officer Bredow said, "[I]f you don't leave, I'm going to arrest you." See Pl.'s Ex. C at 25 (Dep. of Matthew Fisher). Mr. Fisher proceeded to leave, stepped off the porch, and headed to the alley

next to Starbucks.  Mr. Fisher was in the alley for about five minutes before Officer Carlen arrested him.

Meanwhile, after Officer Bredow first instructed the crowd to leave if they had not purchased Starbucks products, Mr. Rosenberg and Mr. Walton immediately left and walked down the street, where they encountered another friend, Kolter Hodges.  Together, they returned to Starbucks.  Mr. Hodges purchased a brownie, Mr. Rosenberg and Mr. Walton purchased a Frappuccino to share, and the three then sat outside on the steps of the porch.  Approximately ten minutes later, Officer Bredow approached them again.  Mr. Hodges showed Officer Bredow the brownie he had purchased and Mr. Rosenberg showed Officer Bredow the Frappucino that he and Mr. Walton had purchased.  Officer Bredow "said nothing, and went back to his car."  <u>See</u> Pl.'s Ex. D at 14-15 (Dep. of Seth Rosenberg). Thereafter, Mr. Welch approached.  Mr. Hodges again presented the brownie and Mr. Rosenberg presented the Frappucino, but Mr. Welch asked them to leave regardless.  In response, Mr. Rosenberg stood up and proceeded to leave.  Mr. Walton protested and asked why, if he had purchased a Starbucks product, he was asked to leave. Officer Bredow stepped in and said to Mr. Walton, "[I]f you don't leave . . . you could get arrested."  <u>See</u> Def.'s Ex. E at 20-21 (Dep. of James Walton).  Mr. Walton then followed Mr. Rosenberg, and both headed to the alley adjacent to Starbucks.  A few minutes later, Officer Bredow arrested Mr. Walton and Mr. Rosenberg.

According to Mr. Rosenberg,

> Mr. Welch had instructed the officers on who to arrest.
> He had instructed the officer, Bredow, to arrest James.
> James was arrested first.  Officer Bredow then pointed to
> me and said, what about him?  And Mr. Welch said, yes,
> him, too.

See Pl.'s Ex. D at 19 (Dep. of Seth Rosenberg).[3]

Mr. Fisher, Mr. Rosenberg, and Mr. Walton were taken to the Doylestown Police Department headquarters, where they were detained for approximately two hours.  Plaintiffs were charged with failure of disorderly persons to disperse, 18 Pa. Cons. Stat. Ann. § 5502, and defiant trespass, 18 Pa. Cons. Stat. Ann. § 3503.  The criminal charges against Mr. Fisher and Mr. Rosenberg were dismissed at their respective criminal hearings.  The criminal charges against Mr. Walton resulted in a juvenile non-adjudication.

On June 21, 2002, Plaintiffs initiated this action against Defendants Welch, Bredow, and the Borough of Doylestown.  In Count I of the complaint, Plaintiffs, pursuant to 42 U.S.C. § 1983, allege that Defendants deprived them of their Fourth and Fourteenth Amendment rights to be free from arrest, detention, and prosecution without probable cause.  In Count II of the complaint, Plaintiffs assert state law claims of assault and battery, and unlawful arrest and malicious prosecution.  Plaintiffs seek compensatory and

---

[3]    Mr. Rosenberg's testimony is corroborated by Shannon Hays, who witnessed Plaintiffs' arrests.

Pl.'s Ex. F at 34 (Dep. of Shannon Hays).

punitive damages, as well as attorneys' fees and costs.[4]

Defendant Bredow now moves for summary judgment. With respect to Count I, Defendant argues that (1) there was probable cause to arrest Plaintiffs; and (2) in the alternative, if the Court finds that Officer Bredow violated Plaintiffs' constitutional rights, he is nonetheless entitled to qualified immunity. With respect to Count II, Defendant argues that (1) his actions do not rise to the level of assault and battery; and (2) he cannot be held liable for malicious prosecution. Lastly, Defendant argues that Plaintiffs are not entitled to punitive damages.

## II.  <u>LEGAL STANDARD</u>

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party moving for summary judgment has the initial burden of showing the basis for its motion. <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). Once the movant adequately supports its motion pursuant to Rule 56(c), the burden shifts to the nonmoving party to go beyond the mere pleadings and present evidence through affidavits, depositions, or admissions on file showing a genuine

---

[4]    By agreement of the parties, the Borough of Doylestown is no longer a party to this lawsuit. Plaintiffs seek punitive damages from Defendant Bredow and Defendant Welch in their individual capacities.

issue of material fact for trial. <u>See</u> <u>id.</u> at 324. The substantive law determines which facts are material. <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). If the evidence is such that a reasonable jury could return a verdict for the nonmoving party, then there is a genuine issue of fact. <u>See</u> <u>id.</u>

When deciding a motion for summary judgment, all reasonable inferences are drawn in the light most favorable to the non-moving party. <u>See</u> <u>Big Apple BMW, Inc. v. BMW of N. Am., Inc</u>., 974 F.2d 1358, 1363 (3d Cir. 1992), <u>cert</u>. <u>denied</u>, 507 U.S. 912 (1993). Moreover, a court may not consider the credibility or weight of the evidence in deciding a motion for summary judgment, even if the quantity of the moving party's evidence far outweighs that of its opponent. <u>See</u> <u>id.</u> Nonetheless, a party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements. <u>See</u> <u>Trap Rock Indus., Inc. v. Local 825</u>, 982 F.2d 884, 890 (3d Cir. 1992).

### III.  <u>DISCUSSION</u>

### A.  <u>Section 1983 Claims</u>

Section 1983[5] is not, by its own terms, a source of

---

[5]    42 U.S.C. § 1983 provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

substantive rights.  Instead, it provides a remedy for deprivations of rights that are established elsewhere in the Constitution or the federal statutes.  See Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979); Kniepp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996).  "The proper inquiry in a section 1983 claim based on false arrest . . . is . . . 'whether the arresting officers had probable cause to believe the person arrested had committed the offense.'" Groman v. Township of Manalapan, 47 F.3d 628, 634 (3d Cir. 1995) (quoting Dowling v. City of Philadelphia, 855 F.2d 136, 151 (3d Cir. 1988)). Probable cause exists when, at the time of the arrest, the facts and circumstances within the arresting officer's knowledge are sufficient to warrant a reasonable person's belief that a suspect was committing an offense.  See United States v. Glasser, 750 F.2d 1197, 1205 (3d Cir. 1984) (citations omitted); Orsatti v. New Jersey State Police, 71 F.3d 480, 483 (3d Cir. 1995).  "Probable cause to arrest requires more than mere suspicion; however, it does not require that the officer have evidence sufficient to prove guilt beyond a reasonable doubt." Orsatti, 71 F.3d at 482-83.

Probable cause is a factual analysis from which the officers on the scene must make an immediate determination.  See Glasser, 750 F.2d at 1206.  It is the function of the courts to determine whether the objective facts available to the officers, at the time of the arrest, were sufficient to justify a reasonable belief that an offense was being committed.  See id.  As a general matter, the

question of probable cause in a § 1983 damage suit is one for the jury.  See Montgomery v. DeSimone, 159 F.3d 120, 124 (3d Cir. 1998).  However, a district court may conclude "that probable cause exists as a matter of law if the evidence, viewed most favorably to plaintiff[s], reasonably would not support a contrary factual finding," and may enter summary judgment accordingly.  Sherwood v. Mulvihill, 113 F.3d 396, 401 (3d Cir. 1997).

In this case, the core of Plaintiffs' constitutional claims under § 1983 is that Officer Bredow unlawfully arrested and detained Plaintiffs in violation of the Fourth and Fourteenth Amendments.  Thus, the central question for this Court in deciding this Motion is whether Officer Bredow had probable cause to arrest Plaintiffs for defiant trespass and failure of disorderly persons to disperse.

## 1. **Defiant Trespass**

Under Pennsylvania law, the crime of defiant trespass occurs when a person remains in a place where he is not privileged to remain after notice of trespass is given.[6]  See Commonwealth v. Conyers, 357 A.2d 569, 570 (Pa. Super. Ct. 1976).  Thus, if a person complies with an order to leave a place, there is no crime

---

[6] 18 Pa. Cons. Stat. Ann. § 3503(b)(1) provides:
A person commits an offense if, knowing that he is not licensed or privileged to do so, he enters or remains in any place as to which notice against trespass is given by:
(I) actual communication to the actor;
(ii) posting in a manner prescribed by law or reasonably likely to come to the attention of intruders.

of defiant trespass.

Defendant argues that probable cause existed to arrest Plaintiffs because Plaintiffs refused to leave the Starbucks' porch after numerous warnings by Officer Bredow. Plaintiffs dispute this version of the events. Specifically, Plaintiffs note that Mr. Rosenberg and Mr. Walton both left immediately after Officer Bredow's first request for non-customers to leave the premises. Thereafter, on their return to Starbucks, Mr. Rosenberg and Mr. Walton purchased a Frappucino to share. At Mr. Welch's request for non-patrons to leave, Mr. Rosenberg immediately stood up and left the porch. Mr. Walton asked why he had to leave if he had purchased a Starbucks product. Upon Officer Bredow's statement that Mr. Walton could be arrested if he didn't leave, Mr. Walton stood up and followed Mr. Rosenberg off the porch and into the alley adjacent to the Starbucks. Similarly, Mr. Fisher initially questioned why he was asked to leave despite having just purchased and consumed an iced tea from Starbucks. However, upon Officer Bredow's statement that Mr. Fisher could be arrested if he didn't leave, Mr. Fisher also proceeded to the alley adjacent to Starbucks. Moreover, testimony that "the cops informed [Mr. Welch] that because [Plaintiffs] were leaving, they had . . . no grounds to arrest [Plaintiffs]" raises doubt as to whether Officer Bredow believed Plaintiffs were trespassing or refusing to leave Starbucks after being asked to do so. See Pl.'s Ex. F at 34.

Based on the above-outlined facts, and drawing all inferences in the light most favorable to the non-moving party in this case, the Court finds that a reasonable jury could find that the facts and circumstances within Officer Bredow's knowledge at the time of Plaintiffs' arrest were insufficient to cause a prudent officer to believe that Plaintiffs committed defiant trespass in violation of 18 Pa. Cons. Stat. Ann. § 3503(b)(1).    Therefore, Defendant's motion for summary judgment on this ground is denied.

### 2. **Failure to Disperse**

Under Pennsylvania law, the offense of failure to disperse is defined as follows:

> Where three or more persons are participating in a course of disorderly conduct which causes or may reasonably be expected to cause substantial harm or serious inconvenience, annoyance or alarm, a peace officer or other public servant engaged in executing or enforcing the law may order the participants and others in the immediate vicinity to disperse. A person who refuses or knowingly fails to obey such an order commits a misdemeanor of the second degree.

18 Pa. Cons. Stat. Ann. § 5502.[7]    To violate this section, a person must be part of a group of three or more persons, be engaged in a course of disorderly conduct,[8] and refuse to comply with an order

---

[7]    Defendant's Memorandum of Law cites § 5502, the failure to disperse statute, but quotes 18 Pa. Cons. Stat. Ann. § 5503, the disorderly conduct statute.  Plaintiffs were charged under § 5502.  Accordingly the Court will analyze this Motion under § 5502.  Further, the Court notes that it would reach the same conclusion under § 5503.

[8]    The Pennsylvania disorderly conduct statute, 18 Pa. Cons. Stat. Ann. § 5503, provides that:
A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he: (1) engages in fighting or threatening, or in

to disperse from the area.   See Commonwealth v. DeFrancesco, 393
A.2d 321, 324 (1978).

Defendant    argues    that    Plaintiffs'    "disrespectful    and
confrontational    behavior,"    combined    with    Plaintiffs'    seeming
refusal  to  leave  the  premises  at  both  Officer  Bredow's  and  Mr.
Welch's  request,  provide  sufficient  probable  cause  to  arrest
Plaintiffs.   See  Def.'s  Mem.  of  Law  at  9.   As  noted  earlier,
Plaintiffs dispute Defendant's version of the events.

Further, in reference to the disorderly conduct statute, the
Pennsylvania Supreme Court has noted that § 5503 may not be "used
as a vehicle to protect the police from all verbal indignities."
Commonwealth v. Hock, 728 A.2d 943, 947 (Pa. 1999).  "[T]he police
must expect that, as part of their jobs, they will be exposed to
daily contact with distraught individuals in emotionally charged
situations."  Id.

Therefore, Defendant's motion for summary judgment on this
ground is denied.

**B. <u>Qualified Immunity</u>**

Officer  Bredow  also  asserts  the  affirmative  defense  of
qualified immunity.

The   doctrine   of   qualified   immunity   protects   government

---

violent or tumultuous behavior; (2) makes unreasonable noise; (3)
uses obscene language, or makes an obscene gesture; or (4) creates
a hazardous or physically offensive condition by any act which
serves no legitimate purpose of the actor.

officials from suit when "their conduct does not violate clearly established statutory of constitutional rights of which a reasonable person would have known." Sharrar v. Felsing, 128 F.3d 810, 826 (3d Cir. 1997) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). In evaluating a claim of qualified immunity, the court conducts a two-step inquiry. First, the court must first determine "whether the facts, taken in the light most favorable to the plaintiff, show a constitutional violation." Douris v. Dougherty, No. Civ. A. 01-5757, 2003 WL 231258, at *10 (E.D. Pa. (Jan. 31, 2003) (quoting Bennett v. Murphy, 274 F.3d 133, 136 (3d Cir. 2002)). Second, if plaintiff's factual allegations establish a constitutional violation, the court must determine whether "a reasonable officer would have known that his actions were not pursuant to law." Douris, 2003 WL 231258, at *10 (citing Bennett, 274 F.3d at 136).

In the context of a claim based on probable cause, qualified immunity shields officers from suit for damages if a reasonable officer could have believed the arrest to be lawful, in light of clearly established law and the information the arresting officers possessed. See Hughes v. Shestakov, No. Civ. A. 00-6054, 2002 WL 1742666, at *2 (E.D. Pa. July 22, 2002) (quoting Anderson v. Creighton, 483 U.S. 635, 641 (1987)). Thus, even law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity. See id.

The Third Circuit has recognized that a "tension exists as to the proper role of the judge and jury where qualified immunity is asserted." Sherwood, 113 F.3d at 401.  Such tension exists because while "the application of qualified immunity is a question of law," the existence of probable cause in a § 1983 action is a question of fact.  Siegert v. Gilley, 500 U.S. 226, 232 (1991); see Sherwood, 113 F.3d at 401; Groman v. Township of Manalapan, 47 F.3d 628, 635 (3d Cir. 1995).  Further, "resort to a jury is appropriate in deciding the qualified immunity issue" if facts material to the reasonableness of the officer's beliefs and actions are in dispute. Sharrar, 128 F.3d at 828.

Factual issues exist making summary judgment inappropriate as to Officer Bredow's determination of probable cause for Plaintiffs' arrest.  These questions, requiring a trier of fact's attention, also prevent summary judgment entitling Officer Bredow to qualified immunity.  See Pahle v. Colebrookdale Township, 227 F. Supp. 2d 361, 373 (E.D. Pa. 2002) (stating that genuine issues of material fact existed to preclude granting of summary judgment based on qualified immunity);  Russoli v. Salisbury Tp, 844 F. Supp. 2d 821, 844 (E.D. Pa. 2000) (same).  Accordingly, Defendant's motion for summary judgment based on an assertion of qualified immunity is denied.

## C. **State Law Claims**

The Court now turns to Plaintiffs' state law claims of assault

and battery, and unlawful arrest and malicious prosecution. Plaintiffs' state law claims are pendent to their federal § 1983 claim, and are properly before the Court pursuant to our power to exercise supplemental jurisdiction "over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). Defendant seeks summary judgment on all of Plaintiffs' state law claims.

### 1. <u>Assault and Battery</u>

Under Pennsylvania law, "[a]ssault is an intentional attempt by force to do an injury to the person of another, and battery is committed whenever the violence menaced in an assault is actually done, though in ever so small a degree upon the person." <u>Renk v. City of Pittsburgh</u>, 641 A.2d 289, 293 (1994). The Pennsylvania Supreme Court explained in a case alleging assault and battery by a police officer,

> A police officer may use reasonable force to prevent interference with the exercise of his authority or the performance of his duty. In making a lawful arrest, a police officer may use such force as is reasonably necessary under the circumstances to effectuate the arrest. The reasonableness of the force used in making the arrest determines whether the police officer's conduct constitutes an assault and battery.

<u>Id.</u>; 18 Pa. Cons. Stat. Ann. § 508.

Here, because issues of fact remain as to whether Officer Bredow's arrest of Plaintiffs was lawful, the Court may not grant summary judgment as to Plaintiffs' state assault and battery

claims.  See Pahle, 227 F. Supp. 2d at 374 (declining to grant summary judgment on assault and battery claims because issues of fact remain).

### 2. Unlawful Arrest and Malicious Prosecution

In Pennsylvania, a plaintiff alleging common law malicious prosecution must show (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; and (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice.  See Merkle v. Upper Dublin School Dist., 211 F.3d 782, 791 (3d Cir. 2000); Kelley v. General Teamsters, Chauffeurs, and Helpers, Local Union 249, 544 A.2d 940, 941 (Pa. 1988).  In order to succeed on the malicious prosecution claim, Plaintiffs must establish that Officer Bredow lacked probable cause to arrest.  See Dintino v. Echols, 243 F. Supp. 2d 255, 267 (E.D. Pa. 2003); Gilbert v. Feld, 842 F. Supp. 803, 814, 821 (E.D. Pa. 1993) (stating that in order to succeed on claims of malicious prosecution and false arrest, the plaintiff must show that the defendant lacked probable cause).  As noted previously, because issues of fact remain as to whether Officer Bredow had probable cause to arrest Plaintiffs, the Court denies Defendant's motion for summary judgment as to this claim.

### C. Punitive Damages

Defendant argues that Plaintiffs are not entitled to recover

punitive damages against Officer Bredow in his individual capacity.

In a § 1983 action, a jury may be permitted to assess punitive damages "when the defendants' conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." Jarlett v. Callis, No. Civ. A. 00-3489, 2001 WL 849709, at *11 (E.D. Pa. July 16, 2001) (quoting Smith v. Wade, 461 U.S. 30, 56 (1983)); see Alexander v. Riga, 208 F.3d 419, 430 (3d Cir. 2000) (citing Smith v. Wade as the "standard for punitive damages in a federal civil rights action," and noting that "outrageousness is not required).

Under Pennsylvania law, punitive damages may be awarded "for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others." Debellis, III v. Kulp, 166 F. Supp. 2d 255, 282 (E.D. Pa. 2001) (citing Rizzo v. Haines, 555 A.2d 58, 69 (Pa. 1989)). The proper focus is on "the act itself together with all the circumstances including motive of the wrongdoer and the relations between the parties . . . ." Rizzo, 555 A.2d at 58 (citing Chambers v. Montgomery, 192 A.3d 355, 358 (1963)). Further, a court may award punitive damages only if the conduct was malicious, wanton, reckless, wilful, or oppressive. See id. (citing Chambers, 192 A.2d at 358).

The Pennsylvania and federal civil rights punitive damages standards are "substantially similar." Jarlett, 2001 WL 849709, at *11.

Plaintiffs have alleged sufficient facts, and have offered adequate supporting evidence, from which a jury could find that Officer Bredow did not have probable cause to arrest Plaintiffs. However, the Court finds that a reasonable jury could not conclude that the conduct of Officer Bredow rises to the level of reckless or callous disregard necessary to justify an award of punitive damages under either § 1983 or Pennsylvania law. See Jarlett, 2001 WL 849709, at *11-12 (granting officers' motion for summary judgment on punitive damages because, although a jury could find that the officers stopped plaintiff without probable cause and placed handcuffs on plaintiff too tightly, causing plaintiff's wrists to swell and leaving red marks, there is insufficient evidence of officers' state of mind to support a finding of intentional or callous indifference). Cf. Debellis, 166 F. Supp. 2d at 282-83 (permitting punitive damages claims to proceed where officer allegedly grabbed and held plaintiff forcefully, kicked plaintiff so that she spun in a 180 degree turn and landed hard on her back, and held plaintiff's hands about her head and pinned her legs to the ground while plaintiff, believing she was about to be raped, screamed for help); Ruiz v. Philadelphia Housing Authority, No. Civ. A. 96-7853, 1998 WL 159038 (E.D. Pa. March 17, 1998)

(permitting punitive damages claims to proceed to a jury because officers allegedly exceeded their jurisdiction, arrested plaintiff without probable cause, shot plaintiff in the abdomen, and then "slammed" him into the ground in the absence of any threatening physical attack by plaintiff).  In this case, the Court finds that Officer Bredow's conduct does not rise to the level of "reckless indifference" demonstrated in <u>Debellis</u>, <u>Ruiz</u>, or even <u>Jarlett</u>. Accordingly, Defendant's motion for summary judgment with respect to the punitive damages claims is granted.

## IV.  <u>CONCLUSION</u>

For the reasons stated above, Defendant's motion for summary judgment is granted with respect to the punitive damages claim. Defendant's motion for summary judgment is denied with respect to Plaintiffs' § 1983 claim, Defendant's assertion of qualified immunity, and the state-law claims of assault and battery, and unlawful arrest and malicious prosecution.

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MATTHEW JOHN FISHER, <u>et</u> <u>al.</u>        :        CIVIL ACTION
                                   :
          v.                       :
                                   :
BOROUGH OF DOYLESTOWN, <u>et</u> <u>al.</u>       :        NO. 02-4007

**<u>O R D E R</u>**

AND NOW, this 28th day of October, 2003, upon consideration of the Motion for Summary Judgment of Defendants Borough of Doylestown and Police Officer Jerold Bredow (Docket No. 10), and Plaintiffs' Response thereto (Docket No. 16), IT IS HEREBY ORDERED that:

(1) By agreement of the parties, the Motion of Defendant Borough of Doylestown is **GRANTED;**

(2) With respect to Plaintiffs' claims for punitive damages, Defendant Bredow's Motion is **GRANTED;** and

(3) Defendant Bredow's Motion is **DENIED** in all other respects.

BY THE COURT:

_____
HERBERT J. HUTTON, S.J.