**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

MATTHEW JOHN FISHER, <u>et</u> <u>al.</u>    :       CIVIL ACTION
                                :
        v.                   :
                                  :
BOROUGH OF DOYLESTOWN, <u>et</u> <u>al.</u>    :       NO. 02-4007

<u>**MEMORANDUM AND ORDER**</u>

HUTTON, S.J.                         December  \_\_\_ , 2003

     Presently before the Court is Defendant Welch's Motion for Summary Judgment (Docket No. 22) and Plaintiffs' response thereto (Docket No. 23).

## I.  <u>BACKGROUND</u>[1]

     On June 21, 2002, Plaintiffs Matthew John Fisher, Seth Rosenberg, and James Walton (collectively "Plaintiffs") initiated this action against Defendants Robert Welch, Police Officer Jerold Bredow, and the Borough of Doylestown.[2]  The incident giving rise to this lawsuit occurred at a Starbucks café in Doylestown,

---

[1]    To the extent the facts are in dispute, they are presented in the light most favorable to the Plaintiffs. <u>See</u> <u>Big Apple BMW, Inc. v. BMW of N. Am., Inc.</u>, 974 F.2d 1358, 1363 (3d Cir. 1992), <u>cert</u>. <u>denied</u>, 507 U.S. 912, 113 S. Ct. 1262, 122 L. Ed. 2d 659 (1993).

[2]    The Court issued a Memorandum and Order on October 28, 2003 that is related to this motion.  By agreement of the parties, the Borough of Doylestown was dismissed as a party from this lawsuit.  The central question before the Court at that time was whether Officer Bredow had probable cause to arrest Plaintiffs.  The Court found that genuine issues of material fact existed and denied Officer Bredow's summary judgment motion with respect to Plaintiffs' 42 U.S.C. § 1983 claim and state law claims of assault and battery, and unlawful arrest and malicious prosecution.  The Court granted Officer Bredow's summary judgment motion with respect to the punitive damages claim.

Pennsylvania.  The Starbucks café is located on the first floor of a large historic building known as Fountain House and owned by Fountain House Investments, L.P.  Defendant Robert Welch is the Vice President of Fountain House Investments, Inc., a general partner of Fountain House Investments.  The porch area of the building was not specifically leased to Starbucks but Starbucks was permitted to provide outdoor seating to its customers on the porch if seating was permitted by local authorities.

On September 8, 2000, Police Officer Jerold Bredow arrived at the Starbucks café.  Seeing a group gathered on the porch, Officer Bredow made an announcement asking all non-Starbucks customers to leave the premises; he then returned to his patrol car, located in the parking lot adjacent to Starbucks.  At the time, Matthew Fisher was seated at a table with his friends while Seth Rosenberg and James Walton were seated on the steps of the porch.  In response to Officer Bredow's request, Fisher purchased an iced tea from Starbucks.  Rosenberg and Walton immediately left the premises but returned after running into another friend.  Rosenberg and Walton then bought a Frappucino together and again sat on the porch.

Approximately ten or fifteen minutes after Officer Bredow made his first announcement, Officer Bredow again approached the porch, accompanied by Robert Welch and another Doylestown police officer,

Lance Carlen.[3]  Welch made a general announcement asking anyone
without a Starbucks product to leave the premises.  Welch then
specifically asked the Plaintiffs to leave.  Fisher protested that
he was a patron, after having purchased the iced tea just moments
before.  Rosenberg presented the Frappucino he jointly bought with
Walton.  Welch requested that Plaintiffs leave the premises
regardless.  Fisher proceeded to the alley next to Starbucks and
was arrested by Officer Carlen.  After Fisher's arrest, Rosenberg
overhead Welch instruct Officer Bredow to arrest Walton and
Rosenberg.

Three witnesses, Matthew St. Leger, Shannon Hays, and Laura
Reeves, further state that Welch was upset that the police officers
initially were not arresting anyone.  According to the three, Welch
then reminded the officers about his status in the community and it
was only then that the officers arrested Plaintiffs.

Plaintiffs were charged with failure of disorderly persons to
disperse, 18 Pa. Cons. Stat. Ann. § 5502 (2003), and defiant
trespass, 18 Pa. Cons. Stat. Ann. § 3503 (2003).  The criminal

---

[3]    According to Defendants, before Officer Bredow, Officer Carlen, and
Welch approached the porch together, several interactions occurred.  A few
minutes after Officer Bredow's first announcement, Officer Bredow made a
second announcement from the middle of the parking lot, asking everyone on the
porch to leave.  Officer Bredow then returned to his patrol car.  At this
point, Welch arrived at the Starbucks, saw Officer Bredow for the first time,
and asked him what was going on.  Welch then made a similar announcement to
the group on the porch, stating that he owned the property and that "if you're
not here on official business with [Welch], [to] please leave the property."
See Dep. Jerold Bredow at 46 (Docket No. 22, Ex. C).  Welch further asserts
that Police Officer Lance Carlen also arrived to the area and saw Welch make a
second announcement to the crowd in front of Starbucks.

charges against Fisher and Rosenberg were dismissed at their respective criminal hearings. The criminal charges against Walton resulted in a juvenile non-adjudication. Defendant Welch now moves for summary judgment.

## II.  <u>LEGAL STANDARD</u>

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party moving for summary judgment has the initial burden of showing the basis for its motion. See <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). Once the movant adequately supports its motion pursuant to Rule 56(c), the burden shifts to the nonmoving party to go beyond the mere pleadings and present evidence through affidavits, depositions, or admissions on file showing a genuine issue of material fact for trial. See <u>id.</u> at 324. The substantive law determines which facts are material. See <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). If the evidence is such that a reasonable jury could return a verdict for the nonmoving party, then there is a genuine issue of fact. See <u>id.</u>

When deciding a motion for summary judgment, all reasonable inferences are drawn in the light most favorable to the non-moving party. See <u>Big Apple BMW, Inc. v. BMW of N. Am., Inc.</u>, 974 F.2d

-4-

1358, 1363 (3d Cir. 1992), <u>cert</u>. <u>denied</u>, 507 U.S. 912 (1993).
Moreover, a court may not consider the credibility or weight of the
evidence in deciding a motion for summary judgment, even if the
quantity of the moving party's evidence far outweighs that of its
opponent.  <u>See</u> <u>id.</u>  Nonetheless, a party opposing summary judgment
must do more than just rest upon mere allegations, general denials,
or vague statements.  <u>See</u> <u>Trap Rock Indus., Inc. v. Local 825</u>, 982
F.2d 884, 890 (3d Cir. 1992).

### III.  <u>DISCUSSION</u>

Plaintiffs set forth two counts against Defendant Welch in
their Complaint.  In Count I, Plaintiffs allege that, pursuant to
42 U.S.C. § 1983, Defendant conspired with the police officers to
deprive them of their Fourth and Fourteenth Amendment rights to be
free from arrest, detention, and prosecution without probable
cause.  In Count II, Plaintiffs assert state law claims of assault
and battery, and unlawful arrest and malicious prosecution.

### A.  <u>Section 1983 Claims</u>

Section 1983 imposes civil liability upon any person who,
acting under the color of state law, deprives another individual of
any rights, privileges, or immunities secured by the Constitution
or laws of the United States.[4]  To establish a civil conspiracy

---

[4]    Section 1983 states:

Every person who under color of any statute, ordinance, regulation,
custom, or usage, of any State . . . subjects, or causes to be
subjected, any citizen of the United States . . . to the deprivation
of any rights, privileges, or immunities secured by the Constitution

-5-

under § 1983, a plaintiff must establish (1) the existence of a conspiracy and (2) a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 150 (1970).

A civil conspiracy is "a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damage." Hampton v. Hanrahan, 600 F.2d 600, 620-21 (7th Cir. 1979), rev'd in part on other grounds, 446 U.S. 754 (1980); see also Marchese v. Umstead, 110 F. Supp. 2d 361, 371 (E.D. Pa. 2000). A plaintiff may use circumstantial evidence in order to prove the conspiracy. See Hampton, 600 F.2d at 621. "An express agreement among all conspirators is not a necessary element of civil conspiracy as long as the participants in the conspiracy share a general objective or the same motives for desiring the same conspiratorial result." Maslow v. Evans, No. 01-3636, 2003 WL 22594577, at *24 (E.D. Pa. Nov. 7, 2003) (citing Hampton, 600 F.2d at 621).

The question of whether an agreement exists is for the jury to decide "so long as there is a possibility that the jury can infer

---

and laws, shall be liable to the party injured in an action at law,
suit in equity, or other proper proceedings for redress.

42 U.S.C. § 1983 (2003); see also Conn v. Gabbert, 526 U.S. 286, 289 (1999);
Gruenke v. Seip, 225 F.3d 290, 298 (3d Cir. 2000).

from the circumstances that [the alleged conspirators] had a meeting of the minds and thus reached an understanding to achieve the conspiracy's objectives." Hampton, 600 F.2d at 621 (citing Adickes, 398 U.S. at 158-59). Thus, when a plaintiff alleges a conspiracy to violate civil rights, "the existence or nonexistence of a conspiracy is essentially a factual issue that the jury, not the trial judge, should decide." Adickes, 398 U.S. at 176.

In this case, Plaintiffs contend that Welch conspired with Officers Bredow and Carlen to unlawfully arrest and detain Plaintiffs in violation of the Fourth and Fourteenth Amendments. Specifically, Plaintiffs contend that the police officers were initially reluctant to arrest Plaintiffs but arrested them at Welch's insistence and claims that he owned "half of Doylestown." Defendant Welch responds that his interactions with the officers do not constitute a conspiracy. In particular, Welch notes that he arrived at Starbucks after Officer Bredow had already made two announcements asking non-Starbucks customers to leave the premises. Welch also contends that the officers made an independent decision to arrest the Plaintiffs after observing the entire incident. The threshold issue before this Court is thus whether a conspiracy existed between Welch and the police officers.

Viewing the evidence in the light most favorable to Plaintiffs, the Court concludes there is sufficient evidence from which a jury could infer that a conspiracy existed. Shannon Hays, a witness to the incident, has stated that the police officers

-7-

arrested Plaintiffs only at Welch's insistence.

> QUESTION: What was the officer's response, if any, to what Matt [Fisher] said?
> ANSWER: That the owner [Welch] had instructed them to make sure that they left, and they should leave before they get in trouble.
> QUESTION: All right.  What happened as people began to leave?  What happened?
> ANSWER: Well, they all started to leave and walked down toward the sidewalk in front of Kenny's, and mainly James [Walton] and a little bit of Matt [Fisher], both continued just saying, we don't think this is fair, but we're going to leave so we avoid getting in trouble.
>
> . . .
>
> QUESTION: And what happened next?
> ANSWER: That's when Bob Welch said – that's when Bob Welch was, like, you need to arrest them.  Then [the police] said no, we can't arrest them.  You [Welch] wanted them to leave, they're leaving, they're following your instructions.  [Welch] said, I own half of Doylestown, you better arrest them now.
>
> . . .
>
> QUESTION: And did the officers appear intimidated by that?
> ANSWER: I don't really feel comfortable deciding what the officers at that moment were feeling.
> QUESTION: Just tell me what their facial expression was when they said that.
> ANSWER: They looked pretty blank, but [the officers] proceeded with arresting [Plaintiffs], even though a moment before [the officers] said they couldn't arrest [Plaintiffs], because [Plaintiffs] were doing what they had been instructed to do.

See Dep. of Shannon Hays, at 48-49, 75 (Docket No. 16, Ex. F).

Hays' deposition is corroborated by two other witnesses, Matthew

St. Leger and Laura Reeves.  See Dep. of Matthew St. Leger, at 32-

33 (Docket No. 24); Seth Rosenberg Hr'g Tr. at 84-85 (Docket No.

16, Ex. B).   Taken together, there is sufficient circumstantial evidence from which a jury could conclude that the police officers believed there were no grounds to arrest Plaintiffs and that, after Welch reminded the officers of his status in the community, an agreement was formed to arrest the Plaintiffs.

Because Plaintiffs have raised a genuine issue of material fact as to whether a conspiracy between Welch and the officers, the Court must deny Defendant's motion for summary judgment.[5]

**B. State Law Claims**

Because fact issues remain to be determined by a jury, the Court will not address Plaintiffs' state law claims at this time.

## IV.   CONCLUSION

For the reasons stated above, Defendant Welch's motion for summary judgment is denied.

An appropriate Order follows.

---

[5]    Having determined that there is a question as to whether a conspiracy existed, the Court does not reach the issue of whether there was a "deprivation of civil rights in furtherance of the conspiracy."  Further, the Court observes that in its October 28, 2003 Memorandum and Order, the Court found genuine issues of material fact as to whether there was probable cause to arrest Plaintiffs.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

MATTHEW JOHN FISHER, <u>et</u> <u>al.</u>    :       CIVIL ACTION
                                 :
          v.             :
                                 :
BOROUGH OF DOYLESTOWN, <u>et</u> <u>al.</u>    :       NO. 02-4007

<u>**O R D E R**</u>

      AND NOW, this \_\_\_\_\_ day of December, 2003, upon consideration of Defendant Robert Welch's Motion for Summary Judgment (Docket No. 22) and Plaintiffs' response thereto (Docket No. 23), and for the reasons stated in the accompanying Memorandum, IT IS HEREBY ORDERED that Defendant's Motion is **DENIED.**

                                     BY THE COURT:


                                    _____

                                    HERBERT J. HUTTON, S.J.